1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES SECURITIES AND
    EXCHANGE COMMISSION,

12

13                                    Plaintiff,

        vs.

14  EMVEST MORTGAGE FUND, LLC,
    EMVEST, INC., and MILON LYLE
15  BROCK,

16                                    Defendants.

|  |  |
|---|---|
| CASE NO. 04cv2295 DMS (POR) | |
| **ORDER RE: RECEIVER'S NINETEENTH REPORT** | |

17         On April 16, 2010, and pursuant to Court Order, the Receiver filed his Nineteenth Verified

18

19  Report ("Report").  (Doc. 486.)  The Securities and Exchange Commission ("Commission") filed a

20  statement of nonopposition, and has no objections or comments to the Nineteenth Report.   The

21  Commission believes the Receiver is winding down the receivership in a reasonable manner.  (Doc.

22  489.)  In its last Order regarding the Receiver's Eighteenth Verified Report, this Court ordered that it

23  would address all issues presented by the Report on the briefs and without oral argument. (Doc. 485,

24  at 4.)

25         Pursuant to Local Rule 66.1, a receiver's report must include (1) a summary of Receiver's

26  operations; (2) an inventory of receivership assets and their appraised value; (3) a schedule of all

27  receipts and disbursements; (4) a list of all creditors, their addresses, and claimed amounts; and (5) a

28  petition  for  instructions  including  a  recommendation  as  to  whether  the  receivership  should  be

1    continued.  The Report provides the following:

2         *1.    Summary of Receiver's Operations*

3         The Receiver reports that despite difficult economic conditions, Emvest Mortgage Fund, LLC's

4    ("Fund's") operations continue in a stable manner with financial controls in place and timely financial

5    reporting to the public.  However, the near total lack of liquidity in the marketplace has slowed the

6    liquidation process.  The Receiver is focused on liquidating the Fund's assets expeditiously while also

7    preserving the Fund's cash so that the liquidation process may be fully supported.  The Receiver did

8    not meet the goal of liquidating the fund by the end of the first quarter of 2010 and it is difficult to

9    predict a new planning target.  (Report ¶1.)

10        Since March 2, 2005, the Receiver has had discretion to make monthly distributions to the

11   investors of up to 6% annually.  The Receiver made such distributions from March 2005 to March

12   2010, but has now temporarily halted the distributions due to a drop in the Fund's revenue.  The

13   Receiver informed members of this change by letter dated March 17, 2010, which is attached to the

14   report as Exhibit 1.  The Receiver is preserving the Fund's cash reserve to cover contingencies such

15   as construction and repairs to Real Estate Owned ("REO") and payment of REO utilities, insurance,

16   and property taxes.  (*Id.* at ¶1.1.)  The Receiver also halted emergency hardship refunds to Members,

17   and has halted cash payments to himself and his attorney of their monthly fees.  The monthly fees for

18   the Receiver and his attorney shall accrue until sufficient cash is available (*Id.* at ¶¶1.2-1.3.)

19        The Receiver reports slow and steady progress in liquidating the Fund's loan portfolio.  On

20   December 31, 2006, the portfolio principal balance was $14,968,831.  As of February 28, 2010, the

21   portfolio principal balance is $1,045,410, plus REO of $1,614,026.  Despite aggressive marketing of

22   the foreclosed properties, the Receiver reports that it is difficult to find qualified buyers, given the real

23   estate market's continued uncertainty and illiquidity.  There are currently twelve lots in escrow waiting

24   to close, and two single family residences and one commercial property listed for sale.  The Receiver

25   is also working with one borrower to refinance a loan, one owner to sell a special-use building, and

26   is attempting to settle two pending lawsuits.  (*Id.* at ¶1.4.)

27        In the Court's "Order re: Receiver's Thirteenth Report," the Court approved a "Member's

28   Equity to Buy REO" Plan, which allows members to use their current equity towards the purchase of

any of the Fund's Real Estate Owned (REO).  The details of this plan are fully discussed in the Court's Order re: the Receiver's Fifteenth Report.  (*See* Doc. 448.)  One Member has purchased a property under the plan and the offer remains in effect as it does not affect the Fund's cash reserves.  (*Id.* at ¶1.5.)

In its "Order re: Receiver's Fourteenth Report," the Court approved a "Discounted Cash-Out" Plan.  Under this Plan, members are permitted to cash-out at 30% of their current equity, and an amount not to exceed $500,000 was allocated for discounted cash-outs. (*See* Docs. 439, 448.)  The program has been temporarily halted to preserve the Fund's cash reserves.  (*Id.* at ¶1.6.)

    2.    *The Fund's Financial Condition*

The Receiver sends periodic reports to members, and posts these reports on the Fund's website (http://emvest.info).   The Report includes the Fund's financial statements, the most recent of which are included with the report as Exhibit "2." (*Id.* at ¶2.)  For the two months ending February 28, 2010, the Fund recorded negative net income of $155,323, including REO costs of $117,131.  (*Id*. at ¶2.1.) For the period ending February 28, 2010, the Fund's loan portfolio is valued at $1,045,410, with REO valued at $1,614,026.  REO is real estate that was taken back by the Fund due to foreclosures.  The amount of REO is expected to grow as more foreclosures are anticipated in the short term.  (*Id.* at ¶2.2.)

    3.    *Request for Instructions*

In the Court's "Order re: Receiver's Seventeenth Report," the Court approved the Receiver's plan to liquidate the Fund by the end of the first quarter of 2010.  The Receiver was unable to meet that goal.  Because of external factors such as the recovery of the economy and stabilization of the real estate market, it is difficult to predict a liquidation date with a high degree of certainty.  Nonetheless, the Receiver believes that a realistic target date is November 1, 2010.  (*Id*. at ¶3.)

The Receiver does not request any instructions related to the receivership.  Accordingly, the Receiver shall continue with the liquidation plan, as previously described, with the goal of liquidating the Fund by November 1, 2010.

Pursuant to Civ. L. R. 66.1, the Receiver shall file, serve, and make available on the website his Twentieth Report no later than ***August 13, 2010***.  Comments or objections shall be filed no later

than *August 27, 2010*.  The matter shall be calendared for *September 3, 2010*, at *1:30 p.m.*, but unless

otherwise ordered, the Court will address all issues on the briefs and without oral argument.

**IT IS SO ORDERED.**

DATED:  May 7, 2010

_____

HON. DANA M. SABRAW
United States District Judge

04cv2295