# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

EMVEST MORTGAGE FUND, LLC, EMVEST, INC., and MILON LYLE BROCK,

Defendants.

CASE NO. 04cv2295 DMS (POR)

**ORDER RE: RECEIVER'S TWENTY-THIRD REPORT**

On December 28, 2011, and pursuant to the July 6, 2011 Order Re: Receiver's Twenty-Second Report, the Receiver filed his Twenty-Third Verified Report and Request for Instructions ("Report"). The Securities and Exchange Commission ("SEC") filed a response with comments. In the July 6 order, the Court indicated that, unless ordered otherwise, it would address all issues presented by the Report on the briefs and without oral argument.

Pursuant to Civil Local Rule 66.1, a receiver's report must include: (1) a summary of the Receiver's operations; (2) an inventory of receivership assets and their appraised value; (3) a schedule of all receipts and disbursements; (4) a list of all creditors, their addresses, and claimed amounts; and (5) a petition for instructions including a recommendation as to whether the receivership should be continued. For the reasons which follow, the Receiver's proposals, included in his request for instructions, are **APPROVED IN PART**.

1. *Summary of Receiver's Operations*

The Receiver reports that the remaining assets of Emvest Mortgage Fund, LLC's ("Fund")[1] continue to be liquidated despite a difficult financial environment, and that accurate and timely financial reports continue to be prepared, distributed to the Fund's Members, and posted on its website. In the process of liquidation, the Receiver seeks to preserve the Fund's cash for any repairs to the Real Estate Owned ("REO") and for payment of utilities, insurance and taxes. Two assets remain to be liquidated, one of which is in the process of being sold. (Report at 2 & 5.)

During the course of this action, the Court approved several Receiver's proposals for cash distributions to Members. In the March 2, 2005 order the Receiver was granted discretion to make monthly distributions of up to 6% annually. Pursuant to orders entered March 2, 2005 and August 8, 2006, he was granted discretion to make emergency hardship distributions. On October 20, 2008, the Court approved the Receiver's proposal for a "Discounted Cash-Out" Plan, which allowed Members to cash-out at 30% of their equity. Those payments were halted in March 2010 to preserve the Fund's cash in light of the slow-down in the liquidation process. It is anticipated that no further distributions will be made under these programs. (Report at 2-4.) To further preserve the Fund's cash, the Receiver agrees to reduce his monthly management fee to zero as of January 1, 2012, but this does not include his non-operations fees. (*Id*. at 3.)

On August 19, 2008, the Court approved a "Member's Equity to Buy REO" Plan, which allows Members to use their current equity towards the purchase of any of the Fund's REO. One Member purchased a property under this plan. Although theoretically the offer remains in effect, as it does not affect the Fund's cash reserves, there has been no interest in it recently and it is anticipated that no further transactions will be made under this plan. (Report at 4.) The Court notes that the last REO is being sold.

Liquidation of the Fund's portfolio is slowly nearing completion. On December 31, 2006, the portfolio principal balance was $14,968,831. As of November 30, 2011, it has been reduced to one REO asset valued at $644,846.00 and one Note valued at $85,000. (Report at 3.) The REO asset, a

---

[1] The Fund was created in 2002 to buy, hold and sell real estate-backed mortgages and related instruments. It invested primarily in high-yield, high-risk mortgages.

commercial property in Los Angeles, was taken back by the Fund through foreclosure. (*Id*. at 5.) It is in escrow with sale scheduled to close this month. (*Id*.) The Note is for a residential loan which is in foreclosure. Although the Receiver worked with the borrower to refinance it, the effort was not successful. (*Id*. at 3, 5-6.) The Receiver therefore proposes to sell the Note on the open market. (*Id*. at 3-4 & 6.)

2. *The Fund's Financial Condition*

The Receiver continues to prepare monthly financial statements, send them with periodic reports to Members, and post them on the Fund's website (http://emvest.info). The Report includes the November 30, 2011 financial statements. (Report at 4 & Ex. 1.) For the eleven months ending November 30, 2011, the Fund recorded a net loss of $98,164. (*Id*. at 5 & Ex. 1.) Its income consists of $18,930 in interest and $2,540 in other income. (*Id*. Ex. 1.) Its liabilities consist largely of REO costs of $56,923 and Receiver and attorney fees of $47,200. (*Id*. at 5 & Ex. 1.) As of November 30, 2011, the Fund's loan portfolio consisted of the Note, whose value has been written down to$85,000, and the last REO valued at $644,846. (*Id*.) In addition, the Fund holds $497,802 in cash. (*Id*. Ex. 1.) The Fund also holds two judgments valued at close to zero. (*Id.* at 6.) The Fund's liabilities consist almost entirely of the accrued unpaid Receiver and attorney fees of $226,060. (*Id*.)

Because the Fund's loan portfolio is being liquidated, and the proceeds of the liquidation have largely been distributed to the Members, the Receiver contends that comparing current and past net income is not a meaningful approach to assessing the Fund's performance at this time. (Report at 4-5.) For the same reasons, tracking and comparing the value of a $10,000 investment in the Fund is no longer a valid measure. (*Id.* at 5.)

3. *Member Distributions*

Since the start of 2007, "more than $8 million has been paid to withdrawing Members." (Report at 4.) In 2011, Members received $404,235.00 in distributions. All current Members have received at least 50% of their original investments, with the overall average at about 62%. (*Id*.) The percentage varies among Members because some Members received emergency distributions in excess of the distributions made to others. The Receiver posted on the Fund's website a complete Member list and the percentage of returns each had received. The Receiver estimates that upon the last

distribution, after selling the remaining REO and Note, the Members will have received approximately 85% of their original investment.

4. *Request for Instructions*

The Receiver's objective is to "fully liquidate the Fund's assets and to close this case by the end of January, 2012." (Report at 6.) In furtherance of this objective, he requests Court approval for a proposed sequence of actions. The SEC largely supports the Receiver's proposal.

Based on the foregoing, the Court approves the following sequence of actions:

1. The Receiver shall retain the two outstanding judgments rather than sell them in light of their lack of value. (*See* Report at 6.)

2. After the REO sale closes, the Receiver shall sell the Note on the open market at the best available offer as soon as reasonably possible. (*Id*. at 7.)

3. The Receiver shall cash in the $10,000 bond. (*Id*. at 6.)

4. The Receiver shall make a final distribution to the Members in a manner which equalizes the percentage payout to each Member. (*Id*. at 7.)

5. The Receiver shall apply for payment of accrued unpaid Receiver and attorney fees, which amounted to $226,060 as of November 30, 2011. The Receiver's proposal to voluntarily discount the Receiver and attorney fees by 20% in order to make additional funds available for distribution is approved. (*Id*.) In addition, the Receiver's proposal to reduce his monthly management fee to zero as of January 1, 2012 is approved. (*Id*. at 3.)

6. The Receiver shall prepare the Fund's income tax returns for 2011 and final returns for 2012. The Receiver's proposal for a fixed $5,000 fee for the preparation and filing of these returns is approved. (*Id*. at 7.)

The Court reserves ruling on the Receiver's proposal regarding the two outstanding judgments. (*See* Report at 7.) The Receiver proposes to continue to monitor the judgments and make another distribution to the Members if any funds are received. While the SEC does not oppose this proposal, it expressed reservations about incurring additional Receiver fees for the monitoring, unless any funds are actually recovered on the judgments. The parties have not indicated how much is owed on the judgments. Accordingly, the Court reserves on this issue pending the Receiver's next report.

Based on the foregoing, the Receiver's proposals are **APPROVED IN PART**. Pursuant to Civil Local Rule 66.1, the Receiver shall file, serve, and make available on the Fund's website his Twenty-Fourth Report no later than **March 9, 2012**. In addition to the information regularly provided with the Report, the Receiver shall also provide a chart showing each Member's investment and distributions, together with aggregate amounts for the Fund as a whole, a summary of all Receiver and attorney fees paid to date, the amounts owing on the two outstanding judgments, and the Receiver's response to the SEC's concern regarding fees for monitoring the judgments. Comments or objections to the report shall be filed no later than **March 23, 2012**. The matter shall be calendared for **April 6, at 1:30 p.m.**, but unless otherwise ordered, the Court will address all issues on the briefs and without oral argument.

**IT IS SO ORDERED.**

DATED: January 24, 2012

HON. DANA M. SABRAW
United States District Judge